# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-01207-SCT

*LAWRENCE BYRD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/2013 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| TRIAL COURT ATTORNEYS: | RONNIE LEE HARPER |
| | DEBRA BLACKWELL |
| | JACOB RAY |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LAWRENCE BYRD (PRO SE) |
| | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: ERIN ELIZABETH PRIDGEN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/12/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     Lawrence Byrd appeals from his conviction of manslaughter and sentence of twenty years. Byrd's appellate counsel filed a brief in compliance with ***Lindsey v. State***, 939 So. 2d 743 (Miss. 2005), certifying to this Court that the record presented no arguable issues for appeal. Byrd has filed a *pro se* brief asserting ineffective assistance of counsel and challenging the sufficiency of the evidence.

¶2.     This Court finds that, after a thorough review of Byrd's *pro se* brief and the record, Byrd's appeal presents no arguable issues, and no supplemental briefing is necessary. Byrd's challenge to the sufficiency of the evidence is clearly without merit, as is his argument that counsel was ineffective for failing to argue that the victim was the aggressor. Byrd's other issues of ineffective assistance of counsel are dismissed without prejudice to his ability to raise them in post-conviction proceedings. We affirm Byrd's conviction and sentence.

**FACTS**

¶3.     On the afternoon of June 6, 2011, Byrd and his close friend Reginald Alexander were socializing with other friends at the home of Larry Isaac in Liberty, Mississippi. Alexander's sister, Anissa Johns, was present. Johns testified that Byrd was drunk. She stated that Byrd asked Alexander for a ride and, when he refused, the two began arguing. Johns testified that the two began throwing punches and then went outside, where the fight continued. Johns stated that she went outside, and Alexander told her to get in the car, presumably to keep her out of harm's way. She turned to walk to the car, and then stood beside it and watched from about ten feet away as the fight continued. Johns stated that, during the fight, Byrd took out a knife and waved it around; she did not see Alexander with a weapon. She saw Byrd stab Alexander with the knife, and she saw Alexander fall to the ground. Byrd walked away without saying anything. Alexander was transported to the hospital, where he died of a stab wound to the abdomen that severed a major artery. A post-mortem blood test revealed the presence of cocaine in Alexander's blood.

¶4.     Byrd was arrested shortly after the stabbing at his nearby residence. The arresting officer removed a four-inch pocket knife from Byrd's pocket that was determined to be the

2

weapon used to stab Alexander. The arresting officer brought Byrd back to the crime scene, where he talked to Investigator Danny Meaux of the Amite County Sheriff's Department. Meaux testified that Byrd seemed intoxicated and smelled like alcohol, and that Byrd admitted that he had been drinking. Byrd repeatedly told Meaux that "he won't be hitting me no more." Meaux took several photographs of Byrd showing that his knees were scraped and bloody, he had scratches on his neck, and his shirt was torn. He also had an older injury just below his eye. Officer Joseph Cothern testified that, when he transported Byrd to the jail, Byrd spontaneously stated "he's not going to hit me again."

¶5.    Four days later, Byrd gave a statement to Agent Ellis Hollingsworth with the investigation division of the Mississippi Highway Patrol. Byrd's attorney was present during his statement. An audio recording of Byrd's statement was played for the jury. While most of the interview was recorded, the final few minutes of the recording inadvertently were destroyed. Hollingsworth stated that, in the missing portion of the recorded interview, Byrd said that Alexander did not have a weapon and had not threatened to kill Byrd. On the recording, Byrd stated that he and Alexander had been friends since childhood. He stated that, in the past year, Alexander sometimes had just "snapped" and jumped on him, and that this had happened twice in the past couple of months, including one recent incident when Alexander had struck him with a beer bottle, later apologizing. When asked about the stabbing, Byrd said he could not remember what had happened. But he admitted that he had not been in fear for his life.

¶6.    Alexander's girlfriend, Treneka Bates, testified for the defense about an incident on June 2, 2011. That day, she, Byrd, and Alexander had driven to McComb to sell some old

3

CDs. Bates testified that Byrd became upset about the low prices offered by potential buyers of the CDs. She said that they stopped at a store, Byrd and Alexander exited the car, and Alexander struck Byrd with a beer bottle, cutting Byrd under his eye. Bates testified that the two immediately returned to the car and exchanged apologies.

¶7.     Byrd called another witness to the stabbing, Joanne Simmons, in his defense. However, Simmons did not appear in court; thus, she did not testify. Simmons had given a statement to the police that was admitted into evidence during the State's case-in-chief with no objection from Byrd. In the statement, Simmons stated that Byrd had stabbed Alexander after Alexander had grabbed Byrd by the collar.

¶8.     The jury was instructed on the elements of murder, manslaughter, and self-defense, and it found Byrd guilty of manslaughter.

## DISCUSSION

¶9.     In *Lindsey*, this Court adopted a procedure "to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal." *Lindsey*, 939 So. 2d at 748. First, "counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(4),(7)." *Id.* In the brief,

> counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

4

*Id.* Next, counsel must forward a copy of the brief to the client, informing the client that counsel was unable to discover any arguable issues in the record, and advising the client that he or she has a right to file a *pro se* brief. *Id.* If the defendant's *pro se* brief raises any arguable issue or the appellate court discovers any arguable issue in its review of the record, then "the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal." *Id.* After the completion of the briefing, "the appellate court must consider the case on its merits and render a decision." *Id.*

¶10.    Here, counsel has submitted a brief in compliance with *Lindsey*. Byrd filed a *pro se* brief arguing that he received ineffective assistance of counsel and that the evidence was insufficient to support the verdict. We have reviewed the record and find no arguable issues for appeal. We further find that Byrd's *pro se* brief raises no arguable issues and that no supplemental briefing is warranted. *See Havard v. State*, 94 So. 3d 229, 235 (Miss. 2012); *Jackson v. State*, 121 So. 3d 313, 317 (Miss. Ct. App. 2013) (finding no need for supplemental briefing when the *pro se* brief raised no arguable issues). We briefly address the issues raised by Byrd's *pro se* brief.

### I. Ineffective Assistance of Counsel

¶11.    Byrd makes various arguments asserting that he received ineffective assistance of counsel. Byrd contends that the stabbing was an accident that occurred when Alexander jumped on Byrd while Byrd was holding his knife to cut the filter off a cigarette. He argues that his counsel was ineffective for asserting the theory of self-defense rather than accident. He also argues that counsel assured him that Johns would not testify. Byrd argues that, had

5

he known Johns would testify, he would have asked to cross-examine her[1] and would have called another eyewitness, Ervin Love, to refute her testimony. He also contends that counsel failed to argue that Alexander, not Byrd, was the aggressor.

¶12.    Issues of ineffective assistance of counsel are most appropriately raised in post-conviction proceedings. *Keithley v. State*, 111 So. 3d 1202, 1206 (Miss. 2013) (quoting *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008)). "This is because during direct appeals the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately." *Archer*, 986 So. 2d at 955. But "[i]ssues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record." M.R.A.P. 22(b). Where, as here, "appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings." *Id.*

¶13.    Byrd points to nothing in the record supporting his allegation that his attorney's strategy of asserting self-defense rather than accident was prejudicial. Nothing in the record indicates that evidence existed to support an accident defense. Byrd's claim that he was prejudiced by counsel's failure to call certain witnesses also cannot be determined from the record. Because these issues of ineffective assistance of counsel are not based on facts fully apparent from the record, we dismiss them without prejudice to Byrd's ability to raise them

---

[1] Byrd's counsel did cross-examine Johns.

in appropriate post-conviction proceedings. *See* **Keithley**, 111 So. 3d at 1206. Nonetheless, we hold that Byrd's argument that counsel was ineffective for failing to argue that Alexander was the aggressor is plainly without merit because the record reveals that defense counsel thoroughly developed the theory that Alexander was the aggressor.

*II. Sufficiency of the Evidence of Manslaughter*

¶14. Byrd did not file a motion for judgment notwithstanding the verdict (JNOV), but he preserved this issue with his motion for a directed verdict. **Smith v. State**, 646 So. 2d 538, 542 (Miss. 1994). On review of a challenge to the sufficiency of the evidence, this Court determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." **Bush v. State**, 895 So. 2d 836, 843 (Miss. 2005) (quoting **Jackson v. Virginia**, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

¶15. Mississippi Code Section 97-3-35, which codifies the crime of manslaughter, states that "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Miss. Code Ann. § 97-3-35 (Rev. 2014). This Court has provided the following definition of "heat of passion:"

> [a] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

7

*McCune v. State*, 989 So. 2d 310, 319 (Miss. 2008) (quoting *Agnew v. State*, 783 So. 2d 699, 703 (Miss. 2001)). For heat-of-passion manslaughter, "there must be such circumstances as would indicate that a normal mind would be roused to the extent that reason is overthrown and passion usurps the mind destroying judgment." *McCune*, 989 So. 2d at 319 (quoting *Agnew*, 783 So. 2d at 703-04).

¶16.    Self-defense is codified at Mississippi Code Section 97-3-15(f), which provides that the killing of a human being is justifiable "[w]hen committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished." Miss. Code Ann. § 97-3-15(f) (Rev. 2014). "The apprehension or fear that will justify killing another in self-defense must appear objectively real to a reasonable person of average prudence." *Hart v. State*, 637 So. 2d 1329, 1339 (Miss. 1994). The defense theory of imperfect self-defense "can reduce intentional killings from murder to manslaughter where the killing is committed 'without malice but under a bona fide (but unfounded) belief that it was necessary to prevent great bodily harm.'" *Young v. State*, 99 So. 3d 159, 165 (Miss. 2012) (quoting *Moore v. State*, 859 So. 2d 379, 383 (Miss. 2003)).

¶17.    Byrd's jury was instructed on murder, heat-of-passion manslaughter, imperfect self-defense manslaughter, and self-defense. The jury found him guilty of manslaughter. Byrd argues that the evidence was insufficient to support his manslaughter conviction because the State failed to prove beyond a reasonable doubt that he did not act in self-defense. He argues that the photographs of his torn shirt, scraped knees, and injured neck and the evidence that Alexander had used cocaine conclusively showed that Alexander was the aggressor.

8

¶18. Considering the evidence in the light most favorable to the verdict, the State presented sufficient evidence that Byrd killed Alexander "without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense." Johns testified that Byrd and Alexander had an altercation during which Byrd waved a knife around and then stabbed Alexander. Sufficient evidence existed to enable a rational jury to find that Byrd acted in the heat of passion or under a bona fide, but unfounded, belief that the stabbing was necessary to prevent great bodily harm. There was no evidence that Alexander had a weapon. In his police statement, Byrd did not claim to have acted in self-defense. He stated that Alexander had not threatened him and he was not in fear for his life. Byrd, at 5'7" and 170 pounds, was considerably larger than Alexander, who was 5'6" and 124 pounds. Clearly, the evidence was sufficient to enable a rational jury to find Byrd did not act in self-defense and to find him guilty of manslaughter.

**CONCLUSION**

¶19. This Court finds that the State's brief complies with the requirements of *Lindsey*. After reviewing Byrd's *pro se* brief and the record, we find no arguable issues that warrant supplemental briefing. Byrd's challenge to the sufficiency of the evidence and his argument that counsel was ineffective for failing to argue Alexander was the aggressor are plainly without merit. Byrd's other issues of ineffective assistance of counsel are dismissed without prejudice to his ability to raise them in post-conviction proceedings.

¶20. **CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY (20) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT SHALL PAY ALL COURT COSTS AND FEES, TO INCLUDE A $200 PROSECUTION FEE.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.**